# Commonwealth ex rel., Appellant, *v.* Philadelphia Contributionship, Etc.

*Insurance—Fire insurance—Mutual policy—Cancellation—Sharing in profits—Deeds—Construction—Corporations—Governing rules—Amendments.*

1. Certain persons formed an unincorporated society for mutual insurance against fire by subscribing to a deed of settlement which declared the purpose of the society to be the "insurance of houses upon the most equal terms, and apart from all views of private gain or interest," and provided that the members should be "equal sharers in the losses as well as in the gains." Thereafter the so-

ciety was incorporated by act of the legislature, which recited the purpose of the society as set forth in the deed of settlement, and empowered the members by majority vote at a general meeting to make rules and regulations "for the better and more perfect prosecution of the true intent and design of said society." An amendment to the deed of settlement subsequently adopted, authorized the cancellation of any insurance policy upon the return of the deposit money alone, without a proportionate share of the accumulated profits. The right of the society to cancel insurance policies was admitted, but its right to retain the share of the profits which such policy had earned was questioned by the Commonwealth in quo warranto proceedings, on the ground that a fundamental corporate purpose of the society, which was profit sharing, was thereby violated. As nothing was said in the act of incorporation about profit sharing, and as the main purpose of the society as disclosed by the act and by the original deed of settlement, was insurance against fire, not division of profits derived from such insurance, the court properly entered judgment for the respondent.

2. Whether a risk assumed by an insurance company, stock or mutual, should subsequently be cancelled for the best interest of all other policy holders, upon terms that are not unjust, is a question which ought to be, and, as a rule, is left to the company's determination.

Argued May 27, 1913. Appeal, No. 31, May T., 1913, by plaintiff, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1910, No. 489, for respondent in quo warranto in case of Commonwealth ex rel. M. Hampton Todd, Attorney General, v. The Philadelphia Contributionship for the Insurance of Houses from Loss by Fire. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Quo warranto to test the right of respondent to exercise certain powers claimed. Before KUNKEL, P. J.

The facts appear in the opinion of the Supreme Court.

The respondent filed an answer to which the plaintiff demurred, and judgment was entered for the respondent on the demurrer. Plaintiff appealed.

*Error assigned,* among others, was the judgment of the court.

R. *Mason Lisle,* for appellant.


*John G. Johnson,* with him *W. W. Montgomery,* for appellee.


OPINION BY MR. JUSTICE BROWN, June 27, 1913:

On March 25, 1752, certain citizens of Philadelphia entered into a mutual agreement or deed of settlement, the object of their compact being thus stated in it: "Whereas the Insurance of Houses from Loss by Fire, hath, where the same has been practised, proved very useful and advantageous to the Publick: Now know ye, that we the said Subscribers hereunto, as well for our own mutual Security, as for the common Security and Advantage of our Fellow-Citizens and Neighbors, and for the promoting of so great and publick a Good as the Insurance of Houses from Loss by Fire, upon the most equal Terms, and apart from all Views of private or separate Gain, or Interest, have of our own Motion offered each to the other, and have unanimously resolved and agreed, and by these Presents do covenant, promise and agree for ourselves severally and respectively, and for our several and respective Executors, Administrators and Assigns, to form, erect and settle an Office, Society or mutual Contributionship, by the Name or Stile of the Philadelphia Contributionship, for the Insuring of Houses from Loss by Fire, and to be and continue Contributors unto, and equal Sharers in the Losses as well as the Gains and Advantages arising, accruing and happening in and by the same, upon the Terms, and according to the Articles and Agreements, and subject to the Provisoes and Conditions herein after mentioned." The cost of insurance consisted in part of a small preliminary payment, but was chiefly a deposit of a certain sum for every £100 insured. On February 20, 1768, the society was incorporated by the Proprietaries of the Province of Pennsylvania and Counties of New Castle, Kent and Sussex upon Delaware, by and with

the advice and consent of the Provincial legislature. By the act of incorporation the society was directed to hold a general meeting of the contributors on the second Monday in April in every year, "or oftener, if the Directors for the Time being, or a Majority of them" should "think fit"; and the following authority was given to the members of the society: "The said Contributors, at every such General Meeting, shall and may, and they are hereby empowered to consider, treat and determine of, and concerning all or every the Matters and Things, relating to the prudent and just Management, and good Order of the said Society; and to establish and confirm all such Articles and Rules, as have been heretofore agreed to, and not ratified and confirmed by this Act, to alter and amend the same, and to make and establish any other additional Rules and Articles, for the better and more perfect Prosecution of the true Intent and Design of the said Society. At all which Meetings the Determination of a Majority of the Contributors present, shall be conclusive and binding on the whole Society; provided always, That the said Rules and Articles be not inconsistent with, or contrary to, the Regulations and Establishments made and declared by this Act." On April 11, 1836, the society's deed of settlement was amended as follows: "Every Policy hereafter to be issued by this Society shall be made to continue in force for an unlimited period. But whenever a total loss of the property shall happen, the Policy, upon the payment of the said loss or upon rebuilding of the property as is hereinafter provided, shall be delivered up to the Society, who shall be entitled to retain the deposit money, and the insurance shall from thenceforth cease and be of no effect. And it shall moreover be lawful for this Society, upon giving thirty days' notice, to cancel the Policy, returning the deposit money upon a surrender of the Policy. It shall also be lawful for the Assured, on giving five days' notice and surrendering the Policy to withdraw the deposit money, allowing a deduction of

five per centum thereon. But in all cases in which the Assured shall withdraw the deposit money, if it shall have happened during the period such Policy has been in force, that the Stock of the Society has been lessened by losses, then and in such case, a just proportion of all such losses as the interest money has been insufficient to satisfy, shall be first deducted out of the said deposit money."

The single question raised in this proceeding, instituted by the Commonwealth, is whether the foregoing amendment, authorizing the cancellation of a policy with the return of the deposit money alone, without a proportionate share of accumulated profits, transgresses the corporate powers conferred upon the appellee. The court below was of opinion that it does not, and from the judgment against the Commonwealth we have this appeal.

The amendment of 1836 was made under what the appellee conceived to be a power conferred upon it by its charter. While the power to cancel a policy is not expressly given by the charter, that power is found by implication in it, if the deed of settlement be read in connection with it. The subscribers to the deed of settlement, and those who might thereafter subscribe to it, "or be allowed so to do," are referred to in the first clause of the deed as "being allowed to be and continue as Persons insuring in this Society." This was notice to every subscriber that, though he were permitted to become a member of the society, his right to continue to be a member of it was not an absolute one, but determinable under rules and regulations adopted or to be adopted by the society. Its members could admit into membership with them whom they pleased; and they could deny membership to any with whom they might prefer not to be associated for the purpose of mutual protection against loss by fire. This situation continued after the society became a corporate body, authorized by the act incorporating it not only to alter

and amend the articles and rules of the unincorporated society, but to make and establish any additional ones "for the better and more perfect Prosecution of the true Intent and Design of the said Society," provided that in so doing they adopted no rules or articles inconsistent with or contrary to the regulations and establishments made and declared by the act. Under these broad words the society has the clear right to provide for the cancellation of a policy. This right is not challenged by the Commonwealth; what is challenged is the right to retain, upon the cancellation of a policy, what is alleged to be the policyholder's proportionate share of accumulated gains. This right is challenged on the ground that it not only is not conferred by the charter, but is in conflict with the same.

The chief purpose of the appellee, as expressly stated in the deed of settlement, is "for the promoting of so great and publick a Good as the Insurance of Houses from Loss by Fire, upon the most equal Terms, and apart from all Views of private or separate Gain, or Interest." True, the subscribers are to be equal sharers in the gains, and such gains may be divided among them: McKean v. Biddle, 181 Pa. 361. But though this is so, it is for the society itself to say when a dividend is to be declared and what the rate is to be. Until it is declared no policyholder has a right to demand that any part of accumulated gains or profits be paid to him, and, when he ceases to be a member of the society, all his rights as a policyholder cease, unless his membership agreement with the society provides otherwise. The condition upon which every policy was issued by the appellee since the amendment of 1836 was that it could be cancelled upon return of the deposit money alone, and every policyholder had notice of this when he accepted his policy.

The main contention of the Commonwealth is that the amendment of 1836 conflicts with a "fundamental corporate purpose" of the appellee—"the division of

profits"—and great stress is laid upon the words in the deed of settlement that the contributors "shall be equal Sharers in the Losses as well as the Gains and Advantages" from the business of the Society. The main purpose of the society, as declared in the deed of settlement, is to insure the houses of the members "apart from all Views of private or separate Gain, or Interest." Turning to the charter itself, there is not a word to be found in it, from beginning to end, indicating any intention on the part of the legislature that one of the purposes of the society was to divide profits. On the contrary, it was incorporated for no such purpose, gain or profit to the policyholders not being contemplated, as appears from the following words of the first preamble in the act of incorporation: "Whereas a number of Persons, for their own mutual Security, and for the common Security and Advantage of their Fellow Citizens, and others, have, by certain Articles of Agreement, bearing Date the twenty-fifth day of March, in the year of our Lord One Thousand Seven Hundred and Fifty-two, formed and entered into a Society, for the Insurance of Houses from Loss by Fire, upon the most equal Terms, and apart from all Views of private or separate Gain, or Interest." Nothing is here said about "equal Sharers in the Losses as well as the Gains and Advantages."

The amendment of 1836 is not inconsistent with or contrary to any regulation or establishment to be found in the Act of February 20, 1768, and, under the broad words of that act, authorizing the appellee to make amendments, "for the better and more perfect Prosecution of the true Intent and Design of the said Society," the assailed amendment was clearly authorized by the act of incorporation. By that amendment the society merely reserves to itself the right to terminate any risk when, in its judgment, "the true Intent and Design" of the society shall call for the termination of it; and whenever such risk is terminated the policyholder has returned to him every cent which he deposited with the

society for its assumption of the risk.   Whether a risk assumed by an insurance company, stock or mutual, should subsequently be cancelled for the best interest of all other policyholders, upon terms that are not unjust, is a question which ought to be, and, as a rule, is left to the company's determination.

The judgment of the court below is so manifestly correct that nothing more need be said in vindication of it, except that it is affirmed.